**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

v.

**REPORT AND**
**RECOMMENDATION**
15-CR-6126 (EAW)

MATTHEW NIX,

            Defendant.

## Preliminary Statement

On September 17, 2015, defendant Matthew Nix ("Nix" or "defendant") was indicted on one count of possession of 100 grams or more of heroin with intent to distribute and one count of possession of cocaine with intent to distribute in violation of the Controlled Substances Act, codified at 21 U.S.C. § 801 et seq. See Indictment (Docket # 7). On November 19, 2015, while still represented by counsel, the defendant filed his own omnibus motion seeking various forms of pretrial relief. See Omnibus Motion (Docket # 14). On January 7, 2016, Nix formally waived his right to counsel and was permitted to proceed pro se. On January 29, 2016, the Court heard arguments from both parties on Nix's omnibus motion, resolving the majority of Nix's claims and permitting him to file further motions if he "discover[ed] new evidence through his review of records" that the Court instructed the government to provide him. Order (Docket # 24) at 3. The Court reserved decision on Nix's motion to suppress evidence obtained from the execution of three

search warrants and instructed the government to provide additional briefing on the matter.  See id.  The government timely filed its additional brief on February 17, 2016.  See Memorandum (Docket # 26).

One day after his omnibus motion hearing, Nix sent the Court three "Affidavits to Establish Standing" in an effort to demonstrate that he had the proper privacy interest to contest the search warrants.  See Affidavits to Establish Standing (Docket # 23).  At the Court's instruction, the government responded to the affidavits.   See  Government's  Response  in  Opposition  to Defendant's Standing Documents (Docket # 25).  On March 7, 2016, after reviewing the records provided by the government following the omnibus motion hearing, Nix filed a supplemental motion seeking sanctions and further responding to the government's briefing on the search warrants.  See Defendant's Supplemental Motion (Docket # 28).

The following is my Report and Recommendation as to these remaining pretrial motions.

## Factual Background

On May 15, 2015, the government submitted applications for warrants to search three locations: (1) 28 Hill Court Circle, Apartment B, in Irondequoit, New York ("Premises One"); (2) 126 Deerhurst Lane, Apartment 4, in Webster, New York ("Premises Two");

and (3) 85 Thomas Street in Rochester, New York ("Premises Three").
The warrants, which sought evidence pertaining to violations of the
Controlled Substances Act, were based on the supporting affidavit
of Sean Martineck, a Special Agent with the Bureau of Alcohol,
Tobacco, Firearms, and Explosives ("ATF").   Exhibit A, annexed to
Memorandum (Docket # 26-1).

Agent Martineck's affidavit details an investigation into the
defendant's charged activity dating back to April 2015.[1]   Id.   The
investigation was supported in large part by a Confidential
Informant ("CI-1"), who, according to the affidavit, "participated
in nine [] recorded, controlled transactions, purchasing a total
of approximately 211 grams of heroin directly from Nix."   Id.
Agent Martineck's affidavit asserts that CI-1 contacted law
enforcement agents on April 8, 2015, informing them that Nix had
provided CI-1 with heroin.   Id. at 20.   From there, ATF agents
worked with CI-1 to contact Nix on his two cell phones and arrange
the nine drug transactions, all of which were conducted under police
surveillance.   Id. at 20-33.   According to Martineck's affidavit,
at the first transaction, Nix referenced Premises Three as a
location from which he would sell heroin.   Id. at 21-22.   Agents

---

[1] The affidavit covers defendant's activity from as far back as 2007
- including his February 20, 2007 guilty plea in the Western District
of New York for possession with intent to distribute fifty grams
or more of cocaine base and possession of a firearm in furtherance
of a drug-trafficking crime – but predominantly focuses on the
government's most recent investigation.   Exhibit A, annexed to
Memorandum (Docket # 26-1) at 17-18.

later observed CI-1 meeting with Nix at Premises Three to allegedly discuss whether police were surveilling him and, on a later date, purchase heroin.   Id. at 28-29, 32.   Additionally, agents observed Nix leaving Premises One to meet CI-1 for a controlled purchase. Id. at 25-26.   The affidavit also describes the agents' interaction with a second confidential informant ("CI-2"), who purchased heroin from Nix's brother.   Id. at 35-36.   Agents observed Nix's brother return to Premises Three after completing the transaction.   Id.

As the supporting affidavit outlines, United States Magistrate Judge Marian W. Payson authorized the government's use of a pen register to obtain cell tower and GPS data from one of Nix's cell phone during the investigation.   Id. at 25.   Agent Martineck's affidavit asserts that, based on an analysis of this data, the government determined that Nix's cell phone was sometimes located around the area of Premises Two for entire nights.[2]   Id. at 27, 29. Agents later observed Nix and vehicles associated with Nix at Premises One and Two.   Id. at 29, 31, 34.   Further, according to Agent Martineck's affidavit, the utility records for Premises One were in the name of a woman with connections to Premises Three.   Id. at 33-34.   At Premises Two, the utility records were in the name of Nix's daughter.   Id. at 34.   Drug traffickers, Agent Martineck

---

[2] In its memorandum, the government created a chart highlighting the different dates and times that the defendant's cell phone was located in the area around Premises Two.   Exhibit A, annexed to Memorandum (Docket # 26-1) at 33.   From April 25, 2015 to May 5, 2015, the government alleges that Nix's cell phone was located in the area around Premises Two for the night on six occasions.   Id.

averred, "often place . . . utilities in names other than their own to avoid detection by government agencies while continuing" to use those premises.  Id. at 16.

Based on the foregoing, Agent Martineck determined that Nix used Premises One and Two as "personal residences" and Premises Three as a hub "to distribute street-level quantities of heroin." Id. at 19.  Relying on his training and participation in similar investigations, he further reasoned that narcotics traffickers frequently    keep    drugs,    drug-distribution    paraphernalia, drug-related contraband, and firearms in their homes and places of business.  Id. at 12-16.  Accordingly, he requested that the Court authorize his request for investigating agents to search the three premises without announcing their presence.  Id. at 36.  Requiring agents to announce their presence, Agent Martineck believed, would provide occupants time to destroy evidence or arm themselves.  Id.

On May 15, 2015, after reviewing Agent Martineck's affidavit, the Court authorized the three warrants, but found that the government failed to establish grounds for a no-knock entry at Premises Two.  Accordingly, the undersigned "crossed out" the following sentence on the warrant for Premises Two: "I find that the affidavit establishes probable cause to search and seize the property so described for the items set forth in the attached Schedule of Items to be Seized and establishes grounds for entry without compliance with the knock and announcement requirement."

On May 18, 2015, the government took Nix into custody and executed the search warrants, finding drugs and drug-distribution paraphernalia, among other things, at the three premises. See Complaint (Docket # 1) at 6-7. Based only on the evidence seized at the premises, a federal grand jury returned an indictment charging Nix with two drug offenses under the Controlled Substances Act. See Indictment (Docket # 7).

## Discussion

A. **Motion to Suppress:** Nix now challenges the legality of the three searches, alleging that the warrants authorizing them lacked probable cause. See Omnibus Motion (Docket # 14) at 6-7. With respect to the warrant for Premises Two, Nix specifically notes that the undersigned "crossed out" a sentence on the warrant stating probable cause existed to allow for a no-knock entry and asserts that this rendered the warrant defective. Id. at 6. Having reviewed Nix's motion papers and the government's responses, the Court disagrees.

The Defendant's Expectation of Privacy: Ordinarily, the Court would decide first whether the defendant had a cognizable Fourth Amendment interest in the evidence found at each of the premises searched before reaching the merits of his claims. See United States v. Haqq, 278 F.3d 44, 47 (2d Cir. 2002)("The cornerstone of the modern law of searches is the principle that, to mount a

6

successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an expectation of privacy in the place searched." (internal quotation marks and citations omitted)). "A defendant seeking to suppress the fruits of a search by reason of a violation of the Fourth Amendment must show that he had a legitimate expectation of privacy in the place searched." United States v. Hamilton, 538 F.3d 162, 167 (2d Cir. 2008) (internal quotation marks omitted). While the parties disagree as to whether Nix has "standing" to challenge the searches, the Court finds that, even if he does, his arguments in favor of suppression lack merit for the reasons set forth below.

Facial Deficiency of the Warrant for Premises Two: First, Nix contends that the search of Premises Two was unlawful because the undersigned "crossed out" a sentence on the warrant stating, in part, that probable cause existed to search the premises. Omnibus Motion (Docket # 14) at 6-7. It is apparent that in my effort to indicate that law enforcement agents would need to announce their presence before searching Premises Two, I erroneously crossed out the entire third paragraph of the search warrant when what I intended to do was only cross out that part of the sentence which authorized a "no knock" entry into Premises Two. This error has been construed by Nix to indicate that I found the search warrant application lacking in probable cause in its entirety. While the Court should have been more careful in defining what I intended to "cross out"

7

page 8 of 22 header

on the warrant form, any error made did not impugn my clear finding
of probable cause to search Premises Two or otherwise invalidate
the search warrant.

To start, a plain reading of the warrant leaves little doubt
that the Court approved the government's search of Premises Two.
Immediately following the crossed-out sentence, the Court
instructed the government that it was to execute the warrant "on
or before May 22, 2015" in the daytime, and that it was required
to "give a copy of the warrant and receipt for the property taken
to the person from whom, or from whose premises, the property was
taken . . . ." See Omnibus Motion (Docket # 14) at 17. Moreover,
the Court left unchanged the government's assertion in the warrant
that Premises Two "is believed to conceal records, fruits,
instrumentalities, and evidence of violations" of the Controlled
Substances Act. Id. Indeed, in Agent Martineck's affidavit –
which is specifically referenced on the face of the warrant and which
the Court reviewed and left unaltered – the government reiterated
that "there is probable cause that Premises 1-3 contain fruits and
instrumentalities of federal narcotics violations" and called for
a seizure of those items. Exhibit A, annexed to Memorandum (Docket
# 26-1) at 38-39. Thus, while the Court erred in "crossing out"
too many words on the warrant form, there can be no real doubt that
the Court had reviewed the warrant application, found sufficient
probable cause to search Premises Two, and gave clear instructions

for the government to execute the warrant. Contrary to Nix's arguments, a fair reading of the totality of the warrant confirms that the Court believed the warrant application satisfied the probable cause standard and authorized the search of Premises Two.

Moreover, Fourth Amendment jurisprudence supports the sufficiency of the warrant. While true that the Fourth Amendment requires a finding of probable cause for a court to issue a warrant, it provides no guidance on how that finding must be displayed. U.S. Const. amend. IV. The Supreme Court has clarified that "[t]he Fourth Amendment does not require that [a search] warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential precondition" to the search and seizure power. United States v. Grubbs, 547 U.S. 90, 98 (2006) (internal quotations omitted); see also United States v. Kone, 591 F. Supp. 2d 593, 609 n.84 (S.D.N.Y. 2008) ("Unlike the particularity requirement, the Fourth Amendment does not explicitly require that a warrant state that a finding of probable cause was made."). In fact, on its face, a warrant only needs to "identify the person or property to be searched, identify any person or property to be seized, [] designate the magistrate judge to whom it must be returned," and command the government to execute the warrant within a specified date and time. See Fed. R. Crim. P. 41(e). This is because "a warrant, which is labeled a 'warrant' and that purports to issue under Rule 41 [of the Federal Rules of Criminal Procedure]

and the Fourth Amendment, may issue *only* upon a judicial finding of probable cause." United States v. Kone, 591 F. Supp. 2d at 609 (emphasis in original); see also Walczyk v. Rio, 496 F.3d 139, 155-56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause."). The absence of the term "probable cause" from the warrant's face should "not cast the slightest doubt" on an issued warrant's legal sufficiency. United States v. Kone, 591 F. Supp. 2d at 609. Accordingly, the question here is not whether the warrants stated that probable cause existed, but whether the warrants were issued upon such a finding. A review of the record shows that they were.

Probable Cause for All Three Warrants: Nix broadly challenges the Court's finding of probable cause for the warrants on several grounds. He highlights a number of assertions in Agent Martineck's affidavit – including claims that CI-1 purchased heroin from him, that he has certain connections to the searched premises, and that he was involved in a series of armed home invasions – and argues that they are "intentionally" "false" and were made "with reckless disregard for the truth." Omnibus Motion (Docket # 14) at 6-7. Nix also argues that assertions in Agent Martineck's affidavit supporting his warrant application to Judge Payson are "self[-]corroborated" and "false." Id. Finally, Nix contends

10

that the government's failure to disclose the identity of CI-1 and CI-2 or turn over certain evidence deprived him of his right to a fair trial. Id.

Generally, probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the place to be searched. Ornelas v. United States, 517 U.S. 690, 696 (1996). When the place to be searched is a dwelling, probable cause "exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ponce, 947 F.2d 646, 650 (2d Cir. 1991), cert. denied, Gonzalez-Calas v. United States, 503 U.S. 943 (1992) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). This standard is a "fluid" one; the circumstances do not need to prove "hard certainties," but rather facts that are sufficient to propel "reasonable and prudent men, not legal technicians," to act. Illinois v. Gates, 462 U.S. at 231.

Here, Agent Martineck's affidavit provides ample probable cause to believe that the items sought – drugs, drug-trafficking paraphernalia, and other contraband – would be found in the premises. After highlighting his fifteen years of experience investigating drug traffickers and his participation in over 500 search warrants, Agent Martineck described in detail nine recent incidents during which CI-1 purchased drugs from Nix. See Exhibit

11

A, annexed to Memorandum (Docket # 26-1). While it is true that some of these controlled buys occurred away from the three premises, that is not a reason to reject a probable cause finding. Indeed, when determining whether probable cause exists to justify a search, the Court must look for a reasonable nexus between the criminal activities described in the warrant application and the place to be searched. "A showing of nexus does not require direct evidence and may be based on 'reasonable inference' from the facts presented based on common sense and experience." United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks and citations omitted). Agent Martineck's affidavit reveals that the defendant was seen exiting and entering Premises One and Three on multiple days when CI-1 purchased heroin from him. Moreover, data obtained from the defendant's cell phone place it at Premises Two on the nights and mornings of other purchases. Taking this into account, Agent Martineck adduced reasons to believe that Nix had drugs and drug-trafficking paraphernalia at the three premises. "Such representations contained in an affidavit for a search warrant are sufficient to support a finding of probable cause." United States v. Morales, 280 F. Supp. 2d 262, 269 (S.D.N.Y. 2003); see also United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) ("[A]n agent's expert opinion [that drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities] is an important

factor to be considered by the judge reviewing a warrant application." (internal citations omitted)); United States v. Gambino, 734 F. Supp. 1084, 1109 (S.D.N.Y. 1990) (finding probable cause to search defendant's home where agent's affidavit contained information concerning defendant's involvement in a narcotics conspiracy and agent's expert opinion that individuals involved in narcotics trafficking are likely to keep incriminating evidence in their homes). In short, Agent Martineck's affidavit evinces a "fair "fair probability" that the evidence sought would be found in the three premises.

Nix also challenges the validity of the warrants under Franks v. Delaware, 438 U.S. 154 (1978), arguing that statements in Agent Martineck's affidavit are intentionally false. Omnibus Motion (Docket # 14) at 6-7. A defendant's challenge to the veracity of an otherwise proper warrant's supporting affidavit merits a hearing for further review under Franks "only if the challenger makes a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and if the allegedly false statement was 'necessary to the finding of probable cause.'" Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). To meet this burden, the defendant's challenge

> must be more than conclusory and must be supported by
> more than a mere desire to cross-examine. There must be

13

allegations of deliberate falsehood or of reckless
disregard for the truth, and those allegations must be
accompanied by an offer of proof. They should point out
specifically the portion of the warrant affidavit that
is claimed to be false; and they should be accompanied
by a statement of supporting reasons. Affidavits or
sworn or otherwise reliable statements of witnesses
should be furnished, or their absence satisfactorily
explained.

Franks v. Delaware, 438 U.S. at 171.

In this case, further review of Nix's Franks claims is not
warranted.   Nix identifies a number of assertions that make up large
chunks of the affidavit - that CI-1 purchased drugs from him on nine
separate occasions, that he has certain connections to the searched
premises, that he was involved in a series of armed home invasions
- and sweepingly declares them to be false.   See Omnibus Motion
(Docket # 14) at 6-7.   He provides no basis for his claim and no
sworn, corroborating statements other than his own.   In short,
Nix's "unadorned conclusory charges do not satisfy the stringent
'substantial preliminary showing' standard of Franks v. Delaware."
United States v. Castiglia, No. CR-85-93E, 1987 WL 30594, at *1
(W.D.N.Y. Dec. 29, 1987); see also United States v. Jimenez, 824
F. Supp. 351, 361 (S.D.N.Y. 1993) ("Unsupported allegations that
an affiant knowingly and intentionally made a false statement in
his affidavit are insufficient.").   Nix's reference to the
mendacity of an affidavit supporting a search warrant authorized
by Judge Payson is similarly unavailing.   The validity of that
affidavit is immaterial: its assertions that Nix possessed and sold

14

heroin had no bearing on this Court's finding of probable cause to search the three premises. Similarly, Agent Martineck's assertions that the defendant committed a series of armed home invasions played no role in this Court's probable cause determination. Accordingly, the Court finds further evaluation of these statements through a Franks hearing unnecessary.

Finally, the defendant raises a two-pronged argument challenging the government's use of confidential informants ("CIs") in the warrant's supporting affidavit, suggesting that the government's failure to disclose the identity of the CIs: (1) constitutes a false statement contemplated by Franks; and (2) deprives him of his right to a fair trial under Roviaro v. United States, 353 U.S. 53 (1957). Omnibus Motion (Docket # 14) at 7. To the extent that the defendant contends that the statements made by the CIs are false statements under Franks, the Court finds that argument baseless. Nix's insinuation that the CIs knowingly lied to Agent Martineck, by itself, presents insufficient grounds to dispute the search warrants. See United States v. Wapnick, 60 F.3d 948, 956 (2d Cir. 1995) (finding that, "if an informant knowingly or recklessly makes a false statement to an affiant, that does not present grounds to challenge the search warrant so long as the affiant in good faith accurately represents what the informant told him"); see also United States v. Cook, 348 F. Supp. 2d 22, 29-30 (S.D.N.Y. 2004) (denying Franks hearing for allegedly false

15

information provided by informant where defendant failed to demonstrate that affiant made the false statement or acted with reckless disregard for the truth).

Relatedly, Nix's argument that the government's failure to disclose the identity of the CIs deprives him of his right to a fair trial is, at this juncture, premature. See United States v. Pierce, 493 F. Supp. 2d 611, 620 (W.D.N.Y. 2006) ("[T]he prosecution is not required to disclose the identity of a confidential informant to assist a defendant in attacking, at pretrial suppression hearings, probable cause for a warrantless arrest and search."). More importantly, the defendant has failed to demonstrate that without such disclosure he would not receive a fair trial. See United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997) ("The defendant bears the burden of showing the need for disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." (internal citations omitted)). Nix's mere "[s]peculation that disclosure of the informant's identity will be of assistance is not sufficient" to meet this burden. See id. Instead, to require disclosure, Nix would need to demonstrate that either CI-1 or CI-2 was "a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). As the case currently stands, the CIs were neither key witnesses, nor participants, in

16

the crimes for which Nix has been indicted: the Indictment charges
Nix with possession of heroin and cocaine seized from the three
premises - not the controlled purchases with CI-1 - and there is
no evidence that the CIs were present for the execution of the
warrants to obtain first-hand knowledge of the charged offenses.
Accordingly, I find that Nix's interest in learning the identity
of the CIs is outweighed by the government's interest in protecting
them.[3]  Id.

    4. Good Faith Exception: In any event, setting aside the above
discussion, Nix has failed to offer any evidence to suggest that
the searching officers did not rely upon the warrants in good faith.[4]
See United States v. Leon, 468 U.S. 897 (1984); see also United States
States v. Cancelmo, 64 F.3d at 807 ("Evidence seized pursuant to
a warrant for which actual probable cause does not exist or which

---

[3] Since filing his omnibus motion, the defendant has listened to the
recordings of the controlled purchases.  It is therefore unclear
to the Court whether CI-1's identity remains a mystery to Nix.
Further, the government has now indicated that, since Nix has
listened to the recordings, it intends to introduce them at trial.
See Response to Defendant's Supplemental Motion (Docket # 32) at
5.  Should the government follow through on that intention, Nix will
have an opportunity to discover the identity of CI-1 then.

[4] The defendant indicates that the executing officers could not have
relied on the warrant for Premises Two in objective good faith
because of the crossed-out sentence.  See Omnibus Motion (Docket
# 14) at 6-7.  For the reasons already outlined in this Report and
Recommendation, I find that unconvincing.  To be clear, it defies
logic to think that the Court would modify, sign, and issue the
warrant for Premises Two with instructions on how to carry out the
search while simultaneously finding that no probable cause exists
to justify the search.

17

is technically deficient is admissible if the executing officers relied on the warrant in objective good faith.")(internal quotations quotations omitted)). For all of these reasons, it is my Report and and Recommendation that Nix's motion to suppress the evidence obtained from the search of the three premises be **denied.**

**B. Supplemental Motion:** At the omnibus motion hearing, the Court Court informed Nix that he would only be allowed to file further motions if he learned new information from evidence the government was instructed to supply him. Order (Docket # 24). Specifically, the Court ordered the government to "provide defendant with copies of nine audio recordings of the alleged sales of heroin" and to "make any and all necessary arrangements to ensure defendant's access and ability to listen to such recordings while in custody." Id. On February 6, 2016, Nix listened to the recordings and subsequently filed the instant motion. Defendant's Supplemental Motion (Docket # 28). In it, he argues that the government's failure to promptly turn over the audio recordings calls for dismissal of the indictment or preclusion of the recordings at trial,[5] and he further briefs the Court on his privacy interest in the three premises and his stance on the objective good faith of the officers who executed the warrants. warrants. Id. at 7-13.

---

[5] The government concedes that the recordings were discoverable under Rule 16 of the Federal Rules of Criminal Procedure, but argues that its failure to promptly disclose them was a good faith effort to protect the CIs. See Response to Defendant's Supplemental Motion (Docket # 32) at 2, 6 n.3.

Before getting to the substance of the defendant's claims, the Court should note that his motion raised several procedural concerns. concerns. To start, at the omnibus motion hearing, the Court made clear that it would only contemplate further motions if they were based on evidence Nix obtained from reviewing the audio recordings of the controlled purchases. To leave no doubt about the Court's intention, I put this arrangement in writing in the Order issued shortly after the hearing. See Order (Docket # 24) at 3. Despite the Court's direction, the defendant has now submitted a motion replete with arguments that he could have raised – and, in some instances, did raise – previously. One possible explanation for the the recycled arguments is that Nix has secured standby counsel since filing his omnibus motion and standing affidavits. See Text Order (Docket # 20). While Nix sought standby counsel to help him "relay messages to the Court" during his incarceration, see Letter from Defendant (Docket # 29) at 2, the Court suspects that counsel played a significant role in preparing this motion. While "hybrid representation" is certainly not unprecedented, see United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989), I note that this development is troubling given the Court's understanding of what Nix wanted standby counsel's role to be.[6]

_____

[6] Over the course of the past year, the Court has assigned Nix three different attorneys under the Criminal Justice Act, each of whom has either moved to withdraw or Nix has asked to be removed from representing him further.

Be that as it may, Nix's substantive arguments can be resolved easily. For the reasons outlined above, the Court finds Nix's argument on standing unnecessary and his argument on objective good faith unpersuasive. To the extent that Nix believes that the government's failure to promptly turn over the audio recordings should result in sanctions, the Court recommends that his request be denied. To date, the Court is hard-pressed to find any meaningful prejudice to the defendant caused by the government's delayed production: the defendant listened to the recordings well before the start of trial and was provided an opportunity to file additional motions based on what he learned from them. See United States v. Salameh, 152 F.3d 88, 130 (2d Cir. 1998) ("A district court has broad discretion in fashioning a remedy for the government's violation of its obligations under Rule 16 . . . ."; see also United States v. Giraldo, 822 F.2d 205, 212 (2d Cir. 1987) (permitting introduction of recordings that were first played at trial after defendant had one week to inspect them). Indeed, the defendant has failed to "demonstrate that the untimely disclosure of the [recordings] adversely affected some aspect of his trial strategy" so as to warrant the drastic relief he seeks. United States v. Adeniji, 31 F.3d 58, 64 (2d Cir. 1994). Accordingly, it is my Report and Recommendation that Nix's motion to impose sanctions, dismiss the indictment, and suppress evidence (Docket # 28) be **denied**.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that the defendant's motion to suppress evidence obtained from the execution of three search warrants (Docket # 14) be **denied.** Further, it is my Report and Recommendation that defendant's supplemental motion to impose sanctions, dismiss the indictment, and suppress evidence (Docket # 28) also be **denied.**

SO ORDERED.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:     April 25, 2016
           Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:        April 25, 2016
              Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).