**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

            v.

MATTHEW NIX,

            Defendant.

---

REPORT AND
RECOMMENDATION
15-CR-6126 (EAW)

### Preliminary Statement

On July 11, 2016, United States District Judge Elizabeth Wolford issued the following text order:

> On April 25, 2016, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a Report and Recommendation [Dkt. 36], recommending denial of motions filed by the defendant, who at the time of the motions was proceeding pro se. Objections were filed on behalf of the defendant, now represented by counsel [Dkt. 40]. Those objections caused this Court to question whether the defendant was raising new issues that had not been previously raised in the motions filed before Judge Feldman, and specifically whether the defendant was now seeking to suppress evidence obtained through warrants issued by the Honorable Marian W. Payson, United States Magistrate Judge. As a result, the Court requested supplemental briefing on that point [Dkt. 45]. In his supplemental briefing, the defendant now raises a number of new issues that have not previously been raised in the pro se motions filed before Judge Feldman, and additionally requests to file additional motions based upon the Superseding Indictment filed on April 28, 2016 [see Dkt. 47].
>
> Based on the foregoing, Defendant is hereby granted leave to file on or before July 25, 2016, any further pretrial motions addressing issues not previously raised and/or ruled upon by Judge Feldman. In the event that any such motions are filed, Judge Feldman will issue a

>scheduling order as to those motions, and this case remains referred to Judge Feldman pursuant to this Court's Text Order of Referral [Dkt. 8]. Nothing contained herein shall operate as a bar to the Government arguing that the defendant has waived any issues that he now seeks to pursue through pretrial motion practice.

See Docket # 48.

Pursuant to Judge Wolford's Text Order, on July 25, 2016, defense counsel filed supplemental motions that are now before this Court. See Docket # 49. On August 15, 2016 the government responded (Docket # 51) and on August 18, the day of oral argument, defense counsel filed a Reply Affirmation (Docket # 52). Prior to hearing from the parties at the August 18th hearing, defense counsel confirmed that all remaining motions were set forth in his supplemental motion papers. The Court then heard arguments from both parties on the defendant's motion, resolving a portion of his claims and reserving decision on the others. See Docket # 53. Following oral argument, the government filed an affirmation from Special Agent D. Matthew Allen from the Federal Bureau of Investigations ("FBI"). Docket # 54. As directed, defendant filed a supplemental affirmation on September 9, 2016 (Docket # 55), and the government responded on October 3, 2016 (Docket # 58). Defendant replied on October 13, 2016 (Docket # 59) and the matter was deemed submitted.

2

## Relevant Facts

A detailed factual summary regarding the defendant's alleged criminal conduct was set forth in this Court's previous Report and Recommendation (see Docket # 36) and will not be repeated here. To the extent additional facts are relevant to this Supplemental Report and Recommendation, they will be set forth below.

## Discussion

**I. Proceedings Before the Grand Jury:** Alleging several possible improprieties, Nix asks this Court to review the grand jury minutes. Before turning to the merits of defense counsel's arguments, it is important to note the heavy evidentiary burden Nix must meet to obtain disclosure of grand jury materials. A presumption of regularity attaches to proceedings before the grand jury and disclosure is permitted only upon a showing that a "ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Thus, the burden is on Nix "to show that a 'particularized need' exists for the minutes which outweighs the policy of secrecy." Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959). See In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996)("The law of this circuit is clear that, once a proceeding falls under Rule 6(e), it receives a presumption of secrecy and closure."). Speculation and conjecture about grand jury improprieties do not meet the particularized need standard. "A review of grand jury minutes is

rarely permitted without specific factual allegations of government misconduct." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990), overruled on other grounds as recognized by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010). Finally, the showing of particularized need applies equally to (1) requests to disclose instructions given to the grand jury and (2) requests seeking only *in camera* review of grand jury materials by the court. United States v. Smith, 105 F. Supp. 3d 255, 259 (W.D.N.Y. 2015) (Wolford, J.).

Based on the foregoing, it is apparent that Nix has not demonstrated particularized need for the materials he seeks and hence his requests for "court review" of grand jury materials must be denied. For example, Nix argues that because he has been separately indicted for, *inter alia*, the use of firearms in furtherance of a crime of violence and violating the Hobbs Act, see United States v. Matthew Nix, 14-CR-6181-EAW-MWP (hereinafter referred to as the "Hobbs Act Indictment"), the court should review grand jury minutes to ascertain "any potential prejudice" to the defendant by having one grand jury consider separate criminal conduct against a single defendant. Assuming that the same grand jury considered both indictments, Nix's unsupported suggestion of grand jury bias or prejudice lacks merit. See e.g. United States v. Moore, 811 F. Supp. 112, 117 (W.D.N.Y. 1992) (denying motion to dismiss the indictment where defendant alleged bias because the same

4

grand jury returned three unrelated indictments against him). Nix also speculates that the grand jury may have served longer than eighteen months without a term extension as required by Rule 6(g) of the Federal Rules of Criminal Procedure. Again, Nix's claim is unsupported with any facts. Indeed, by defense counsel's own calculations, the grand jury served for 17 months and 21 days. See Affirmation of Michael Witmer, Esq. (Docket # 52) at ¶ 8. In any event, as defense counsel conceded at oral argument, a grand jury's term of service can be extended for an additional six months when such an extension is in the "public interest." See Fed. R. Crim. P. 6(g). Nix has produced no evidence suggesting that the grand jury that returned the indictment against him was not properly constituted. The unsupported suspicion of defense counsel as to what might have occurred in a grand jury proceeding is a legally insufficient ground to grant the relief Nix requests. See e.g. United States v. Shaw, 2007 WL 4208365, at *6 (S.D.N.Y. Nov. 20, 2007) ("To warrant the 'extraordinary relief' of disclosure of grand jury proceedings, a criminal defendant must make a specific factual showing. Speculation and surmise as to what occurred before the grand jury is not a substitute for fact." (quotations and citations omitted)).

The remainder of Nix's requests for review of grand jury materials suffers from the same lack of legal merit, factual support and particularized need. For these reasons, it is my Report and

Recommendation that Nix's motion for inspection or court review of grand jury materials should be **denied**.

**II. Double Jeopardy:** Defense counsel next argues that because the allegations in the instant indictment may be "concerning the same transactions" alleged in the Hobbs Act Indictment, Nix's double jeopardy rights may be implicated. Nix asks that the Court review the allegations and, if there is any "overlap," preclude the government from proceeding on both indictments. See Docket # 49 at 4. Since the Hobbs Act Indictment was pending before Judge Payson, the Court asked the government to describe the differences in the criminal conduct alleged in both indictments. The government explained that the narcotics conspiracy alleged in the Hobbs Act Indictment was a "one day conspiracy" that allegedly occurred on a single day (September 23, 2014), that the conspiracy alleged in the indictment before this court did not begin until after the Hobbs Act Indictment conspiracy ended and that there were no overlapping members of the two conspiracies. Based on these representations, defense counsel informed the Court that he was satisfied that there was no double jeopardy issue and, without objection, the Court deemed the motion resolved. Accordingly, and for the reasons articulated more fully by the Court at oral argument, defendant's motion is **denied without prejudice**.

**III. Use of "StingRay" Device:** Nix has moved to require the government to disclose the use of any "StingRay" device in the

6

investigation of this matter. See Docket # 49 at 4. At oral argument, counsel for the government represented that a "StingRay" device was not used during the investigation of this case. Accordingly, and for the reasons articulated more fully by the Court at oral argument, defendant's motion is **denied as moot**.

**IV. Video Surveillance:** Nix has moved to suppress video surveillance evidence the government obtained by utilizing two video cameras. The first camera was mounted in a (presumably) unmarked law enforcement car parked in the Waverly Woods Apartment Complex in Webster, New York. This camera recorded video images of the outside of 126 Deerhurst Lane. The government did not obtain permission of the apartment complex owner to park the car in the apartment complex's parking lot. The second camera was attached, with the permission of RG&E, to an RG&E owned utility pole. The utility pole camera continuously recorded video images of the parking lot and exterior of the apartment building located at 28 Hill Court Circle. See August 24, 2016 Affirmation of FBI Special Agent D. Matthew Allen (Docket # 54). Neither camera recorded any audio during the dates and times at issue here. In addition, the government asserts, and the defendant does not dispute, that neither camera could or did record images depicting the inside of any apartment or dwelling. According to the government, and again not disputed by Nix, both cameras recorded images "readily observable

by anyone in the publicly accessible parking lot[s]". Id. at ¶¶ 3-4.

The basis for Nix's motion to suppress appears to be his view that a warrant was required before the FBI could surreptitiously install and utilize the video camera. See Docket # 49 at ¶¶ 20-22. The government opposes suppression on two grounds; first, the government argues that Nix has no "standing" to contest the video evidence because he had no reasonable expectation of privacy in the areas captured by the cameras and, second, even if Nix had standing, a warrant was not required. The Court agrees with the government on both counts.

In the absence of a reasonable expectation of privacy, the Fourth Amendment's requirement of obtaining a warrant based on probable cause is inapplicable. Illinois v. Andreas, 463 U.S. 765, 771 (1983) ("The Fourth Amendment protects legitimate expectations of privacy rather than simply places. If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause."). Thus, "[n]o reasonable expectation of privacy inheres in what is left visible to the naked eye." United States v. Gori, 230 F.3d 44, 50 (2d Cir. 2000) (internal citations and quotations omitted); see United States v. Houston, 813 F.3d 282, 288 (6th Cir. 2016) (finding "no Fourth Amendment violation, because [defendant] had no reasonable expectation of privacy in video footage recorded by a camera that

was located on top of a public utility pole and that captured the same views enjoyed by passersby on public roads"); United States v. Fields, 113 F.3d 313, 321-22 (2d Cir. 1997) (no search warrant for home needed where police peer through window where blinds are raised, since "what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection"). Here, Nix simply had no reasonable expectation of privacy from being observed walking in the parking lot of apartment complexes that, while privately owned, are easily accessible to the public. See e.g., United States v. Hoover, 152 F. App'x 75, 77 (2d Cir. 2005) ("Defendant has no reasonable expectation of privacy from others viewing his van when parked in a multi-user parking lot."); United States v. Brooks, 645 F.3d 971, 975-76 (8th Cir. 2011) (no reasonable expectation of privacy in the parking lot of a private apartment where the activities observed could be seen by members of the public).

Even if Nix could establish that he had an expectation of privacy in the apartment complex parking lots, there is nothing illegal about law enforcement utilizing video technology to observe and record activities in public view.[1] "[T]he Fourth Amendment does not punish law enforcement for using technology to more efficiently conduct their investigations." United States v. Houston, 813 F.3d

---

[1] There is no dispute that the cameras here only recorded visual evidence and did not intercept voices. An entirely different legal analysis applies where law enforcement intercepts or eavesdrops on private conversations.

9

at 288 (6th Cir. 2016); see e.g. United States v. Wymer, 40 F. Supp. 3d 933, 940 (N.D. Ohio 2014) ("What matters is whether someone who happened to pass by could view what was going on", because the pole camera saw nothing that someone could not view.); United States v. Krawczyk, No. CR12-01384-PHX-DGC, 2013 WL 3853213, at *1 (D. Ariz. July 25, 2013) (law enforcement placement of pole cameras in places where persons could not sit or stand, in combination with the long-time duration of the surveillance, does not violate the Fourth Amendment.).

Nix argues that the pole camera was illegally installed. See Docket # 59. In response, the government submitted an affirmation from Agent Allen that specifically asserts "[t]he Rochester Police Department had permission of RG&E to install the camera on the utility pole." See Docket # 54, at ¶ 4. The documents and hearsay conversations defense counsel has proffered in reply (see Docket # 59) do not raise an issue of fact and, more importantly, even assuming that the pole camera was installed without explicit RG&E permission, Nix has failed to show how he can derivatively assert a basis to suppress evidence from a trespass on someone else's property.

Finally, invoking Franks v. Delaware, 438 U.S. 134 (1978), Nix claims that the search warrant applications contained material and intentional false statements. According to Nix, ATF Agent Sean Martineck tried to deceive this Court by repeatedly neglecting to

inform the Court that the observations he was describing in his supporting affidavit were not made by Agent Martineck while physically present at the location, but rather by viewing video recordings of the matters he described in his affidavit. See Docket # 55 at ¶ 18-35.

"To be entitled to a Franks hearing, a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding. . . . If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a Franks hearing." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998) (internal citations omitted).

Here, assuming Nix to be correct, I find that the failure to inform this Court that the events described in the warrant application were based on viewing video evidence and not personal observation was not a deliberate falsehood sufficient to constitute a Franks violation. While it may have be a better practice to inform the court if the affiants' observations were based on a review of video surveillance evidence, a probable cause finding necessary to support a search warrant can be based wholly on hearsay. See Fed.

R. Evid. 1101(d)(3). Moreover, there is no suggestion that the actual information described by Agent Martineck in his affidavit was inaccurate or unreliable. Accordingly, I find no Franks violation and no need to hold an evidentiary hearing.

**V. Bill of Particulars:** With one exception, the Court already addressed defendant's motion for a bill of particulars. The exception concerns Nix's demand to know "how more than 1 kilogram of heroin was alleged in this case." See Docket #55 at ¶¶ 39-40. This request seeks evidentiary material which is generally not appropriate for a bill of particulars. United States v. Sosa-Lopez, No. 06-CR-6198 L, 2007 WL 3113323, at *5 (W.D.N.Y. Oct. 22, 2007) (Payson, J.), report and recommendation adopted, No. 06-CR-6198L, 2008 WL 111195 (W.D.N.Y. Jan. 9, 2008) ("A bill of particulars is not to be used as a discovery device to obtain 'evidentiary detail' about the government's case."). During oral argument the government noted that the requested evidentiary details will be apparent once Jencks Act materials are disclosed.

**VI. Appointment of Investigator:** As discussed at oral argument, defense counsel may submit an ex parte motion requesting appointment of an investigator.

**VII. Suppression of Warrantless Audio:** For the reasons set forth on the record during the hearing, including the fact that Nix has failed to point the Court to any case law that would support

his request, the defendant's motion for suppression of warrantless audio **is denied.**

**VIII. Alleged Discovery Violations:** Nix claims that the government did not timely provide him with access to the audio and video recordings and seeks dismissal of the indictment because the late disclosure resulted in a violation of his Speedy Trial rights. See Docket # 49, at ¶ 33; Docket # 55, at ¶¶ 43-57. This motion appears to renew the claim Nix previously made and this Court previously determined in my April 25, 2016 Report and Recommendation. See Docket # 36, at 18-20. As noted therein, the government conceded that it did not promptly disclose recordings to the defense. Coordinating discovery in this case has been complicated by the fact that Nix has had several assigned attorneys and, for a period of time, represented himself. Indeed, during oral argument the government asserted, and the defendant did not dispute, that some of the recordings at issue were brought to the jail and viewed by the defendant during the period of time when he was acting pro se. In sum, for the reasons set forth in my previous Report and Recommendation, I do not find sanctions appropriate for any discovery violation. As to the defendant's right to a speedy trial, there were numerous reasons unrelated to disclosure of audio and video tapes for the exclusion of time under the Speedy Trial Act and contemporaneous exclusions of time were made either on the record or in Speedy Trial Exclusion Orders. Nix has not "languished

13

in jail [for an entire year] just to receive his discovery." See Docket # 55 at ¶ 54. Accordingly, it is my Report and Recommendation that Nix's motion to dismiss the indictment for violation of his statutory and due process right to a speedy trial be **denied**.

**IX. Prosecutorial Vindictiveness:** Defendant argues that the superseding indictment should be dismissed because the government acted vindictively by (1) returning the Superseding Indictment after defendant requested a preliminary hearing on the original Indictment; (2) indicting defendant on Hobbs Act violations after defendant refused to cooperate with the government on the original charges; and (3) issuing the Superseding Indictment based exclusively on information in possession of the government at the time of the original Indictment. Docket # 49, at ¶¶ 34-37.

There are two types of prosecutorial vindictiveness: (1) cases in which there is a presumption of vindictiveness and (2) cases in which there is evidence of actual vindictiveness. Nix has demonstrated neither.

Presumptive vindictiveness arises where a prosecutor uses a charging decision to retaliate against a defendant for exercising a constitutional or statutory right. Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978); see Blackledge v. Perry, 417 U.S. 21, 28-29 (1974)(presumptive vindictiveness applies when prosecutor indicts defendant on a felony after defendant appeals his misdemeanor conviction). The Second Circuit has generally "limited the

14

application of such a presumption to prosecutions brought after post-conviction activity of defendants." United States v. White, 972 F.2d 16, 19 (2d Cir. 1992). Thus, "[t]here is no presumption of prosecutorial vindictiveness when a prosecutor seeks a superseding indictment in a pre-trial setting." United States v. Lopez, 60 F. App'x 850, 854 (2d Cir. 2003) (finding no presumption of vindictiveness where prosecution brought superseding indictment after withdrawal of plea). And prosecutors are permitted to carry out a threat to indict defendant on a more serious charge if defendant declined a plea offer. Bordenircher v. Hayes, 434 U.S. at 363-65 (1978). A defendant may also show actual vindictiveness by producing direct evidence of prosecutorial animus, "such as a statement by the prosecutor evidencing the vindictive motive." United States v. Koh, 199 F.3d 632, 640 (2d Cir. 1999).

Here, the evidence of animus proffered by Nix falls far short of demonstrating either strain of prosecutorial vindictiveness. The fact that the preliminary hearing in this case did not occur because prior to the scheduled hearing date the government presented the case to a grand jury and an indictment was returned is not evidence of vindictiveness, but rather a proper exercise of prosecutorial discretion. Offering a more favorable outcome of a criminal prosecution if the defendant agrees to cooperate with law enforcement is also not evidence of vindictiveness. Finally, in the absence of evidence of actual animus, a criminal defendant has

no right to direct the timing or nature of charges that the government may bring against him, so long as those charges are legitimate and supported by probable cause. Accordingly, it is my Report and Recommendation that Nix's motion to dismiss the Superseding Indictment for vindictive prosecution should be **denied**.

X. **Payments to Government Informant:** Nix seeks to exclude or suppress the testimony of a criminal informant on the basis that the informant was paid. See Docket # 49, at ¶¶ 40-42; Docket # 55, at ¶¶ 70-73. The government concedes that the informant was paid. The fact that an informant was compensated or rewarded in any way by law enforcement in return for his or her cooperation or testimony is clearly material evidence that would be of use to the defense and hence must be disclosed. See United States v. Bagley, 473 U.S. 667, 676-77 (1985)(information that impeaches a government witness is Brady material). Accordingly, the Court directs the government to disclose to defense counsel the details of any payments made to any government witness within the last five years, including dates and amounts of payments. Such disclosure must be made at least 30 days before trial or the pretrial conference, whichever is earlier. In the absence of evidence that the government has not complied with this Order, Nix's motion for suppression or exclusion is **denied**. Finally, during oral argument the government agreed to turn over all Jencks Act materials relating to informant witnesses at least

30 days prior to trial. Accordingly, this aspect of the defendant's motion is deemed to be resolved.

**XII. Audibility Hearing:** This motion is premature as the defendant has not identified any recording that he claims is inaudible. The standard procedure in this district is for the government to disclose those recordings it intends to use and provide transcripts to defense counsel well in advance of trial. If a dispute exists as to the audibility of the designated recording or the accuracy of the government transcript, defense counsel may seek the intervention of the Court. It is expected that this procedure will be followed in the prosecution of the defendant here.

## Conclusion

The defense, through counsel and while acting pro se, has filed numerous motions in this case seeking various forms of relief. The Court has tried to address each motion either during the hearings held or in my Reports and Recommendations. To the extent some aspect of a defense motion or some request for particular relief is not explicitly mentioned in this Report and Recommendation, such motion or request has been reviewed and considered by this Court and is **denied**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: November 7, 2016
Rochester, New York

17

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: November 7, 2016
Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).